USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/18/22

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
UNITED STATES OF AMERICA            :
                                    :
      -against-                     :          No. 11 Cr. 755 (JFK)
                                    :          No. 20 Civ. 9097 (JFK)
                                    :
JOVANNY RODRIGUEZ,                  :          **OPINION & ORDER**
                                    :
                      Defendant.    :
------------------------------------X

APPEARANCES

FOR DEFENDANT JOVANNY RODRIGUEZ:
     Pro Se

FOR THE UNITED STATES OF AMERICA:
     Jacob H. Gutwillig
     U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

Presently before the Court is pro se Defendant-Petitioner

Jovanny Rodriguez's ("Rodriguez") motion to vacate, set aside or

correct his sentence pursuant to 28 U.S.C. § 2255(a).[1]  The

Government opposes Rodriguez's motion.  For the reasons set

forth below, Rodriguez's motion is DENIED.

     **I. Background**

          **A. Factual Background**

----

[1] On October 14, 2021, Rodriguez filed a pro se motion seeking
reconsideration of the Court's January 5, 2021, Opinion & Order,
United States v. Rodriguez, No. 11 Cr. 755 (JFK), 2021 WL 37689, at *1
(S.D.N.Y. Jan. 5, 2021), which denied Rodriguez's earlier motion for
compassionate release under the First Step Act, 18 U.S.C. §
3582(c)(1)(A), and his alternative request for bail pending resolution
of the instant § 2255 motion.  (ECF No. 503.)  The Court will address
Rodriguez's motion for reconsideration by separate opinion.

On October 11, 2013, Rodriguez was convicted by a jury of one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Count One); one count of conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201 (Count Two); five counts of substantive Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Counts Four, Seven, Eight, Nine, and Ten); two counts of kidnapping, in violation of 18 U.S.C. § 1201 (Counts Five and Eleven); two counts of using, possessing, and brandishing a firearm during and in relation to the substantive robberies and kidnappings, in violation of 18 U.S.C. § 924(c) (Counts Six and Twelve); and one count of conspiracy to distribute and possess with intent to distribute narcotics, in violation of 21 U.S.C. § 846 (Count Fifteen).[2] (Verdict Form, ECF No. 163; PSR ¶¶ 2–3, 5–13, 16, 19.)  The charges stemmed from Rodriguez's role in a violent armed robbery crew that, from at least December 2009 through May 2011, targeted drug dealers and business owners in New York City and Nassau County, New York.  (Presentence Report ("PSR") ¶¶ 2, 24.) During a three-week trial, the Government offered evidence that Rodriguez and his two co-defendants, Oscar Minaya ("Minaya") and Jesus Hilario-Bello ("Hilario-Bello"), participated in twelve

---

[2] The jury acquitted Rodriguez on one count of carrying a firearm during and in relation to a conspiracy to commit Hobbs Act robbery and a conspiracy to commit kidnapping, in violation of 18 U.S.C. § 924(c) (Count Three).  (Verdict Form, ECF No. 163.)

distinct robberies.[3]  (Government Memorandum of Law in Opposition ("Mem. in Oppo."), ECF No. 498 at 3-4.)  The Government's evidence included, among other things, the testimony of 23 witnesses, including five cooperating co-conspirators, law enforcement officers, and several victims.  (Id.)

Rodriguez's sentencing occurred on March 14, 2014, during which the Court found a Guideline offense level of 44, which was "literally off the guideline chart," and a Criminal History Category of II.  (Sentencing Transcript ("Sent. Tr.") at 11:25-12:2.)  The Court noted that Rodriguez was a member of a violent group that robbed drug dealers and other individuals.  (Id. at 11:13-16.)  "[S]everal of the robberies took place at gunpoint. . . . People were kidnapped.  People were robbed.  It was very serious behavior."  (Id. at 11:13-22.)  The Court sentenced Rodriguez to life in prison on the three kidnapping counts of conviction, as well as extensive terms of imprisonment on the remaining counts, two of which necessitated a 32-year mandatory minimum term of incarceration.  (Id. at 12:13-13:12.)

### B. Procedural Background

---

[3] The Court presumes the parties' familiarity with the facts of the various robberies, which are described in detail in the Court's February 24, 2014, Opinion and Order denying Rodriguez's motion for judgment of acquittal and motion for a new trial.  See United States v. Rodriguez, No. 11 Cr. 755 (JFK), 2014 WL 715614, at *1 (S.D.N.Y. Feb. 24, 2014), aff'd, 761 F. App'x 53 (2d Cir. 2019).

On December 25, 2013, Rodriguez filed a motion for a judgment of acquittal and a new trial pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure, respectively. (Motion for Acquittal and New Trial, ECF No. 220).  By Opinion and Order dated February 24, 2014, the Court denied Rodriguez's motion, noting that "ample evidence" was presented at trial supporting the charges and conviction.  United States v. Rodriguez, No. 11 Cr. 755 (JFK), 2014 WL 715614, at *7 (S.D.N.Y. Feb. 24, 2014), aff'd, 761 F. App'x 53 (2d Cir. 2019).

On March 25, 2014, Rodriguez appealed his conviction to the Second Circuit, arguing that (1) the indictment in his case ("Indictment") was not sufficiently specific; (2) the evidence at trial prejudicially varied from what was charged in Count Nine of the Indictment; and (3) the Court's jury instruction on the interstate commerce element of Hobbs Act robbery was inappropriately broad.  (ECF No. 266.)  On February 5, 2019, the Second Circuit issued a Mandate affirming Rodriguez's judgment of conviction in its entirety.  See United States v. Rodriguez, 761 F. App'x 53 (2d Cir. 2019), vacated on other grounds Minaya v. United States, --- U.S. ---, 140 S. Ct. 463, 205 L. Ed. 2d 265 (2019).  In rejecting Rodriguez's arguments on appeal, the Second Circuit held that (1) the Indictment fairly informed him of the charges, (2) there was no prejudicial variance between Count Nine of the Indictment and the evidence presented at

4

trial, and (3) the Court's jury instructions regarding interstate commerce were not erroneous.  (Id. at 57–58.)

On October 29, 2020, Rodriguez filed the instant motion to vacate his conviction pursuant to 28 U.S.C. § 2255. (Motion to Vacate ("Motion"), ECF No. 450).  On April 15 and 16, 2021, Rodriguez filed two memoranda of law in support of his Motion. (April 15 Memorandum in Support, ECF No. 474 ("ECF No. 474"); April 16 Memorandum in Support, ECF No. 475 ("ECF No. 475").) In his Motion, Rodriguez argues that his convictions must be vacated because his trial counsel was constitutionally ineffective and his indictment in this case was obtained, in part, through false testimony before a grand jury.  (ECF Nos. 474, 475.)  Specifically, Rodriguez argues that New York City Police Department ("NYPD") Detective Donald DeRienzo ("DeRienzo") falsely testified before a grand jury that a victim and Government witness, Gregorio Nunez ("Nunez"), had identified two of Rodriguez's co-conspirators, Jose Ortega ("Ortega") and Juan Marte ("Marte"), when presented with two photo arrays of possible perpetrators.  (ECF No. 474, 7–10.)  Rodriguez maintains that DeRienzo's grand jury testimony was knowingly false because during his trial, Nunez testified that he never identified Ortega and Marte.  (Id.)  Rodriguez argues that the allegedly false testimony was incorporated into the arrest warrant for his co-conspirators and that his subsequent arrest

was "derivative of[] [their] unconstitutional arrest[.]"  (ECF No. 475 at 5.)

By Order dated May 11, 2021, the Court informed Rodriguez that it would consider both memoranda of law filed in support of the instant motion.  (ECF No. 479.)  The Court further noted that it interpreted Rodriguez's memoranda to raise the following arguments in support of his motion to vacate: (1) his trial counsel provided constitutionally ineffective assistance; (2) his initial arrest was the product of false information; and (3) the prosecution committed misconduct by suborning perjury during the trial.  (Id.)  On August 6, 2021, the Government filed its memorandum in opposition ("Memorandum in Opposition") to Rodriguez's Motion.  On September 16, 2021, Rodriguez filed a Reply.  (Reply, ECF No. 499.)  Due to the nature of Rodriguez's claims, the Court ordered that his trial counsel, Peter E. Brill, submit an affidavit in response to Rodriguez's Motion.  (ECF No. 517.)  The Court received the affidavit on June 20, 2022.  (Affidavit of Attorney Peter E. Brill, ECF No. 527.)  On June 28, 2022, the Court received a letter from Rodriguez entitled "Supplement—Clarifying Ground Two of 2255 Motion."  (ECF No. 532.)  In the letter, Rodriguez reiterates his allegations regarding the alleged perjury before the grand jury and makes passing reference to the Supreme Court's recent decision in United States v. Taylor, --- U.S. ---, 142 S. Ct.

6

2015 (2022), which held that attempted Hobbs Act robbery cannot serve as a predicate offense for a conviction under 18 U.S.C. § 924(c).

## II. Applicable Law

Under 28 U.S.C. § 2255(a), a federal prisoner may collaterally challenge his sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States."  To obtain relief under § 2255, a petitioner must establish "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).  Pursuant to § 2255(b), a district court is required to hold an evidentiary proceeding "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]"  28 U.S.C. § 2255(b).  The Second Circuit, in turn, has interpreted this provision to require a hearing where the petitioner pleads a "'plausible' claim of ineffective assistance of counsel."  Raysor v. United States, 647 F.3d 491, 494 (2d Cir. 2011) (quoting Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009)).  "It is within the district court's discretion to determine the scope and nature of a [§ 2255(b)] hearing. . . .

7

Thus, when the judge who tried the underlying proceeding[] also presides over a § 2255 motion, a full-blown evidentiary hearing may not be necessary." Id. (citation omitted.)  "'Bald allegations' unsupported by evidentiary facts do not" warrant a hearing. Puglisi, 586 F.3d at 213 (quoting Newfield v. United States, 565 F.2d 203, 207 (2d Cir. 1977)).

To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 669, 688-94 (1984).  Under the first prong of the Strickland test, "the proper standard for attorney performance is that of reasonably effective assistance."  Id. at 687.  In applying this standard, the "court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'"  United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 689). The burden is on the defendant to show that his counsel "'made errors so serious that counsel was not functioning as the

'counsel' guaranteed the defendant by the Sixth Amendment.'"
Harrington v. Richter, 562 U.S. 86, 105 (2011) (quoting
Strickland, 466 U.S. at 687).

Under the second prong of the Strickland test, "[i]t is not
enough for the defendant to show that the errors had some
conceivable effect on the outcome of the proceeding. . . . The
defendant must show that there is a reasonable probability that,
but for counsel's unprofessional errors, the result of the
proceeding would have been different." Strickland, 466 U.S. at
693-94.  In this context, a "reasonable probability is a
probability sufficient to undermine confidence in the outcome."
Id.  Accordingly, "the prejudice component of the Strickland
test . . . focuses on the question whether counsel's deficient
performance renders the result of the trial unreliable or the
proceeding fundamentally unfair." Lockhart v. Fretwell, 506
U.S. 364, 372 (1993).  Finally, the Court notes that pro se
litigants, such as Rodriguez, "are entitled to a liberal
construction of their pleadings, which should be read 'to raise
the strongest arguments that they suggest.'" Green v. United
States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v.
Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).

**III. Discussion**

Rodriguez's arguments in support of the instant motion fall
into two categories.  The first are allegations that his trial

counsel, Peter E. Brill ("Brill"), was constitutionally
ineffective because he failed to raise various legal arguments
during and after the trial.  The second are substantive
arguments based on alleged instances of Government misconduct—
namely, DeRienzo's purportedly false grand jury testimony and
the Government's introduction of Nunez's testimony during the
trial.  The Court addresses these arguments in turn.

### A. Ineffective Assistance of Counsel

Rodriguez raises four arguments in support of his claim
that Brill's representation was constitutionally ineffective.
First, he argues that Brill failed to move to dismiss the
indictment based on "outrageous government misconduct."  Second,
he argues that Brill failed to adequately investigate the
government's case against him and prepare for his trial.  Third,
he alleges that Brill improperly failed to object to the Court's
jury instruction relating to the interstate commerce element of
Hobbs Act robbery.  Finally, he contends the Brill failed to
challenge his convictions under 18 U.S.C. § 924(c).  In its
Memorandum in Opposition, the Government argues that Rodriguez
has either "procedurally defaulted or previously raised on
direct appeal each of the arguments he makes in the guise of
ineffective assistance of counsel."  (Mem. in Oppo. at 12.)  The
Government also argues that even if Rodriguez's claims were
procedurally proper, he cannot satisfy the requirements of

Strickland "with respect to any of his claims." (Id.)  The
Court agrees with the Government and declines to grant a hearing
on Rodriguez's ineffective assistance of counsel claims because
"the motion and the files and records of the case conclusively
show that" he is not entitled to any relief.  28 U.S.C. §
2255(b).

### 1. Failure to Move to Dismiss the Indictment

Rodriguez first argues that Brill was constitutionally
ineffective because he failed to file a motion to dismiss the
indictment based on alleged inconsistencies between DeRienzo's
grand jury testimony, the substance of which was included in the
complaint charging Ortega and Marte ("Ortega-Marte Complaint"),
and Nunez's trial testimony.  As relevant here, Ortega and Marte
were charged by complaint on June 30, 2011, with kidnapping,
conspiracy, and several firearm offenses.  (Mem. in Oppo. at
13.)  The charges in the Ortega-Marte Complaint were based on
the May 15, 2011, kidnapping and robbery of Nunez, which also
served as the basis for Counts Ten, Eleven, and Twelve of
Rodriguez's Indictment.  (Indictment, ECF No. 146.)  During the
kidnapping and robbery, Rodriguez's co-conspirators forced Nunez
into a van at gunpoint and "repeatedly hit him with a wrench
wrapped in a rag."  (Presentence Report ("PSR") ¶ 37.)  They
then robbed him of his wallet, $500 in cash, two cell phones,
and a gold chain.  (Id.)  The evidence adduced at trial

11

established that Rodriguez helped plan the attack and shuttled his co-conspirators to and from the scene of the crime.  See Rodriguez, 2014 WL 715614, at *8.

As noted above, DeRienzo testified before the grand jury that during a May 20, 2011, interview, Nunez identified Ortega and Marte as two of the individuals involved in the attack. (ECF No. 474, Ex. D.)  At Rodriguez's trial, Nunez testified that the attackers "didn't let [him] see them face-to-face." (Trial Transcript ("Tr.") at 65:2.)  He further testified, "I am not 100 percent sure as to their faces. So how can I see pictures?"  (Id. at 65:12-13.)  When the Court asked Nunez directly if "the police or the prosecutors . . . show[ed] [him] any pictures of people?" Nunez responded "[n]o."  (Id. at 65:14-19.)

Relying exclusively on Nunez's trial testimony, Rodriguez asserts that DeRienzo's grand jury testimony was intentionally false and that the Government's reliance on the testimony constituted "outrageous government conduct."  (ECF No. 474 at 10.)  Rodriguez argues that Brill, by failing to file a motion to dismiss the indictment following Nunez's trial testimony, provided constitutionally ineffective assistance of counsel. According to Rodriguez, "there is no doubt that had [Brill] filed a motion to dismiss the indictment in this case, the

indictment would have been dismissed." (ECF No. 474 at 12-13.) The Court disagrees.

To establish ineffective assistance of counsel with respect to the failure to make a motion, "the underlying motion must be shown to be meritorious, and there must be a reasonable probability that the verdict would have been different if the [motion had been granted]." United States v. Matos, 905 F.2d 30, 32 (2d Cir. 1990); see also Bruno v. Superintendent, Five Points Corr. Facility, 639 F. App'x 683, 685 (2d Cir. 2016) (summary order) ("To satisfy the prejudice requirement of Strickland, [the defendant] must show, at a minimum, that he could have prevailed on a properly pursued . . . motion."). The dismissal of an indictment due to government misconduct "is a drastic remedy that is rarely used." United States v. Percoco, No. 16 Cr. 776 (VEC), 2017 WL 6314146, at *24 (S.D.N.Y. Dec. 11, 2017) (citing United States v. Dyman, 739 F.2d 762, 768 (2d Cir. 1984)). Indeed, dismissal is only appropriate "if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." Bank of Nova Scotia v. United States, 487 U.S. 250, 256-57 (1988). Of particular relevance here, the Second Circuit has held that "[a] district court cannot dismiss an indictment because the prosecution presented unreliable,

misleading, or incomplete evidence to the grand jury.'" United States v. Howard, 216 F.3d 1074 (2d Cir. 2000).

Rodriguez's ineffective assistance claim fails because the contemplated motion to dismiss the indictment would have been denied as meritless.  As an initial matter, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. Yannotti, 541 F.3d 112, 127 (2d Cir. 2008) (internal quotations omitted) (citing United States v. Stravoulakis, 952 F.2d 686, 693 (2d Cir. 1992)).  The various Counts in Rodriguez's Indictment, including the Counts related to the May 15, 2011, kidnapping of Nunez, tracked the language of the relevant statutes and identified the time and place of the charged criminal acts.  Furthermore, even if the record supported Rodriguez's claim that DeRienzo's testimony was false, which it does not, dismissal on that basis alone would not have been warranted.  Rodriguez offers no evidence that DeRienzo's testimony in a grand jury proceeding relating to the indictment of Ortega and Marte "substantially influenced the grand jury's" subsequent decision to indict him. Bank of Nova Scotia, 487 U.S. at 256.  Moreover, Rodriguez has failed to identify any other alleged prosecutorial misconduct that would "raise a substantial and serious question about the fundamental fairness" of the grand jury proceeding that resulted in his

14

indictment.  Id. at 259; see also United States v. Jones, 164
F.3d 620, 1998 WL 708952, at *2 (2d Cir. 1998) (Table Decision)
("[A] defendant's complaint that a government agent gave the
grand jury misleading testimony—including an inaccurate summary
of evidence—is in essence a challenge to the reliability or
competence of the evidence and, absent other prosecutorial
misconduct, will not support dismissal of an indictment.").
Accordingly, because the Court would have denied the
contemplated motion as meritless, Brill's failure to file the
motion did not fall below an "objective standard of
reasonableness."  Strickland, 466 U.S. at 688; see also United
States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he
failure to make a meritless argument does not rise to the level
of ineffective assistance"), cert. denied, 516 U.S. 927 (1995).

### 2. Failure to Investigate

Similarly unavailing is Rodriguez's argument that Brill
"provided ineffective assistance when he failed to adequately
investigate and prepare for trial."  (ECF No. 474 at 13-15.)  In
support of his claim, Rodriguez argues that "[a]s soon as
Gregorio Nunez testified that DeRienzo had not shown him (Nunez)
a photograph array . . . trial counsel should have moved for an
immediate cessation of the trial so that he could fully
investigate the stunning revelation and then move, if warranted,
for dismissal of the indictment . . . . " (Id. at 13.)

For substantially the same reasons just discussed, Rodriguez's second claim fails to satisfy the requirements of Strickland. "For counsel's [decision] to rise to the level of constitutional ineffectiveness, the decision . . . must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy." United States v. Belfiore, 473 F. Supp. 3d 72, 94–95 (E.D.N.Y. 2020) (quoting Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir. 1997)). Accordingly, "[a]ctions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance."  Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 689).

Here, Brill's decision to refrain from seeking an "immediate cessation of the trial" following Nunez's graphic description of the May 15, 2011, kidnapping and robbery was reasonable.  (See, e.g., Trial Transcript ("Trial Tr.") at 48:12–13 ("They beat me quite a lot over my head and my knees and my feet."); Id. at 53:1–25 (describing how the assailants directed him "with the gun put to my head").)  Furthermore, Nunez's identification of Ortega and Marte had little impact on the outcome of Rodriguez's defense.  The Government presented overwhelming evidence, including in the form of eye-witness testimony, of Rodriguez's participation in the twelve robberies charged in the Indictment.  See Rodriguez, 2014 WL 715614, at *7

(noting that "there was ample evidence for the jury to conclude that Rodriguez participated in the charged crimes as well as the overarching conspiracies").  Accordingly, even if Brill had sought an adjournment, the outcome of the trial would have remained the same.  Rodriguez, therefore, cannot establish prejudice and his second ineffective assistance claim fails.  See Garner v. Lee, 908 F.3d 845, 849 (2d Cir. 2018) ("[G]iven the strong evidence of [the defendant's] guilt, he has not shown that his defense was constitutionally prejudiced by trial counsel's conduct even assuming, arguendo, that it was deficient.")

### 3. Failure to Object to Jury Instruction

Rodriguez next argues that Brill was ineffective because he failed to object to the Court's jury instruction relating to the interstate commerce element of Hobbs Act robbery, which Rodriguez contends was improper because it was overly broad.  (ECF No. 474 at 15.)  As noted previously, Rodriguez raised this exact claim on direct appeal to the Second Circuit.  In affirming his conviction, the Second Circuit rejected Rodriguez's argument and held that the Court's jury instructions were proper.  Rodriguez, 761 F. App'x at 57-58.  Because Rodriguez previously raised this meritless argument, it is procedurally barred and is, therefore, rejected.  See United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001) (noting that §

17

2255 motion cannot be used as a vehicle to "relitigate claims that were actually raised and considered on direct appeal").

### 4. Failure to Challenge Constitutionality of 28 U.S.C. § 924(c)

Finally, Rodriguez argues that Brill was ineffective because "he failed to argue that § 924(c)(3)(B) [is] unconstitutionally vague" in violation of due process. (ECF No. 474 at 13.)  Citing the Supreme Court's decision in United States v. Davis, --- U.S. ---, 139 S. Ct. 2319 (2019), which invalidated the so-called "residual clause" of § 924(c)(3)(B) as unconstitutionally vague, Rodriguez argues that "none of the predicate offenses in the case at bar satisfy the force clause element of § 924(c), and thus [he] is actually innocent of all the § 924(c) charges in the indictment." (ECF No. 474 at 13).

Rodriguez's argument fails on the merits.  As noted above, Rodriguez was convicted of two § 924(c) counts, Counts Six and Twelve, and acquitted of a third, Count Three.  The § 924(c) charge contained in Count Six was predicated on the Hobbs Act robbery offense charged in Count Four and the kidnapping offense charged in Count Five.  (Indictment at 10.)  The § 924(c) charge in Count Twelve was predicated on the Hobbs Act robbery charged in Count Ten and the kidnapping offense charged in Count Eleven. (Id. at 14.)  The Second Circuit has repeatedly held that substantive Hobbs Act robbery remains a "crime of violence"

under the "force clause" of § 924(c) after Davis.  See United
States v. Walker, 789 F. App'x 241, 245 (2d Cir. 2019) (holding
that "[o]ur prior holding in [Hill], that substantive Hobbs Act
robbery is a crime of violence under the elements clause of §
924(c)(3)(A), is unaffected by Davis . . ."); see also United
States v. Felder, 993 F.3d 57, 79 (2d Cir. 2021) (noting Hobbs
Act robbery is crime of violence under the elements clause).
"In the context of § 924(c), when a conviction rests on the use
of a gun in relation to multiple predicates, and one of the
predicates is later found to be invalid, the conviction may
still survive if the § 924(c) charge is clearly supported by a
predicate presenting no legal concern."  Rosario Figueroa v.
United States, No. 16 Civ. 4469, 2020 WL 2192536, at *4
(S.D.N.Y. May 6, 2020) (cleaned up).  In fact, the Second
Circuit relied on this principle when rejecting Oscar Minaya's
nearly identical challenge to his conviction on Counts Six and
Twelve.  See United States v. Minaya, 841 F. App'x. 301, 303-05
(2d Cir. Jan. 22, 2021) (upholding § 924 conviction "rest[ing]
on one valid predicate crime . . . and one arguably invalid
predicate crime" because nature of charges and review of record
left "no doubt that a rational juror would have convicted Minaya
on the § 924(c) charge even had [the valid predicate] been the
sole predicate charged").

19

Similar to Minaya's claim on direct appeal, Rodriguez's collateral challenge fails because, even if substantive kidnapping is "arguably" no longer a "crime of violence" after Davis, see Minaya, 841 F. App'x. at 303-05, Rodriguez's § 924(c) convictions on Counts Six and Twelve were "clearly supported" by the substantive robbery charges in Counts Four and Ten, Rosario Figueroa, 2020 WL 2192536, at *4.  The jury found Rodriguez guilty beyond a reasonable doubt of both substantive robberies and overwhelming evidence was adduced at trial that firearms were used in furtherance of both crimes.  See Rodriguez, 2014 WL 715614, at *7-10.  Accordingly, "there is no possibility, . . . and at the very least not a reasonable probability, . . . that the jury relied solely on the invalid kidnapping predicates in convicting [Rodriguez] on Counts Six and Twelve."  Minaya, 841 F. App'x at 306 (citation and internal quotation marks omitted); see also Pagan v. United States, No. 10 Cr. 392-1 (CS), 2022 WL 1124924, at *3 (S.D.N.Y. Apr. 14, 2022) (concluding that a defendant's § 924 convictions were "clearly supported by non-conspiracy predicates" because the jury convicted him of "the substantive counts corresponding to those predicates").  Because Rodriguez's § 924(c) convictions rested on a valid predicate offense, his argument concerning Brill's failure to challenge Counts Six and Twelve are meritless.

## B. Prosecutorial Misconduct

In addition to his ineffective assistance claims, Rodriguez argues that his conviction must be vacated because his arrest and prosecution were the product of DeRienzo's allegedly false grand jury testimony and the Government suborned perjury by offering Nunez's testimony at trial. In response, the Government maintains that Rodriguez's arguments are "procedurally defaulted, defy logic, and should be rejected." (Mem. in Oppo. at 21.) The Court agrees.

### 1. Procedural Default

As an initial matter, Rodriguez is procedurally barred from raising these claims because he did not raise them on direct appeal. "'[A] claim may not be presented in a [§ 2255 motion] where the [defendant] failed to properly raise the claim on direct review,' unless the claim is one asserting ineffective assistance of counsel, or '[the defendant] establishes either (1) cause for the failure to bring a direct appeal and actual prejudice from the alleged violations; or (2) actual innocence.'" United States v. Sessa, No. 92 Cr. 351 (ARR), 2011 WL 256330, at *17 (E.D.N.Y. Jan. 25, 2011) (quoting Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007)), aff'd, 711 F.3d 316 (2d Cir. 2013). Here, Rodriguez offers no explanation for his procedural default and his claims of prosecutorial misconduct do not involve an assertion of actual innocence. Accordingly, Rodriguez's claims are procedurally barred and, for

that reason alone, they are rejected.  See United States v.
Thorn, 659 F.3d 227, 231 (2d Cir. 2011).

### 2. Prosecutorial Misconduct Claims are Meritless

Rodriguez's claims also fail on the merits.  As noted
previously, Rodriguez argues that his conviction must be
overturned because DeRienzo allegedly testified falsely before
the grand jury and the Government suborned perjury by offering
Nunez's testimony at trial.  "[A] showing of perjury at trial
does not in itself establish a violation of due process
warranting [§ 2255] relief."  Ortega v. Duncan, 333 F.3d 102,
108 (2d Cir. 2003) (citation omitted).  A conviction will be set
aside if the defendant proves that: "(1) false testimony was
introduced; (2) the prosecutor knew or should have known that
the testimony was false; (3) the false testimony went
uncorrected; and (4) there was a reasonable likelihood that the
false testimony could have affected the judgment of the jury."
Calderon v. Keane, 115 F. App'x 455, 457 (2d Cir. 2004) (summary
order) (citing Shih Wei Su v. Filion, 335 F.3d 119, 127 (2d Cir.
2003)).  Where the government is unaware of the perjury, the
conviction must be set aside only "if the testimony was material
and 'the court [is left] with a firm belief that but for the
perjured testimony, the defendant would most likely not have
been convicted.'"  Ortega, 333 F.3d at 108 (quoting United
States v. Wallach, 935 F.2d 445, 456 (2d Cir. 1991)).

Here, the record does not support Rodriguez's claims that DeRienzo testified falsely and that the Government knowingly suborned perjury at trial. Furthermore, even if Rodriguez's claims were true, vacatur would not be warranted because Nunez's prior identification of Ortega and Marte was not material to Rodriguez's conviction. As discussed above, the evidence of Rodriguez's guilt was overwhelming and consisted of trial testimony from co-conspirators and other eyewitnesses. The Government's evidence relating to the May 15, 2011, kidnapping and robbery included testimony not only from Nunez, but also from two cooperating witnesses who testified to Rodriguez's role in the planning and execution of the robbery. See Rodriguez, 2014 WL 715614, at *8-9; see also United States v. Reyes, 49 F.3d 63, 68 (2d Cir. 1995) (holding that a government agent's perjury did not warrant a new trial where the "testimony was of marginal significance" and the "core of the evidence" came from a different witness). Given the weight of the Government's evidence and the limited relevance of the testimony at issue, there is no "reasonable likelihood" that the testimony "could have affected the judgment of the jury." Wallach, 935 F.2d at 456; see also United States v. Wong, 78 F.3d 73, 82 (2d Cir. 1996) ("[W]here independent evidence supports a defendant's conviction, the subsequent discovery that a witness's testimony at trial was perjured will not warrant a new trial."). Finally,

the Court notes that any defects in the Indictment—including any defects caused by false or misleading testimony—were remedied by the trial jury's guilty verdict.  See United States v. Eltayib, 88 F.3d 157, 173 (2d Cir. 1996) ("[A] guilty verdict by a petit jury remedies any possible defects in the grand jury indictment.").

In sum, Rodriguez's claims of prosecutorial misconduct are meritless and are, therefore, dismissed.

**IV. Conclusion**

For the foregoing reasons, Rodriguez's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED.  The Court declines to issue a certificate of appealability, as Rodriguez has not made a substantial showing of a denial of a constitutional right.  See Matthews v. United States, 682 F.3d 180, 185 (2d Cir. 2012).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and permission to proceed in forma pauperis is DENIED.  The Clerk of Court is respectfully directed to terminate the motion at No. 11 Cr. 755, ECF No. 450, and to close the case at No. 20 Civ. 9097.  The Court will mail a copy of this Opinion and Order to Rodriguez.

**SO ORDERED.**

Dated:   New York, New York
        July/ , 2022

                             John F. Keenan
                United States District Judge